**David W. Criswell, OSB# 92593**
dcriswell@balljanik.com
BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, OR 97204
Telephone: (503) 228-2525
Facsimile: (503) 226-3910
Of Attorneys for Amy Mitchell,
Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>**GKPS, Inc.,**<br><br>    Debtor. | Case No. 04-34670-tmb7<br><br>**MEMORANDUM OF LAW IN SUPPORT OF TRUSTEE'S MOTION FOR SUBSTANTIVE CONSOLIDATION UNDER § 105(a)** |

Amy Mitchell, Trustee ("Trustee") for the Chapter 7 bankruptcy estate of GKPS, Inc., submits the following Memorandum of Law in Support of Trustee's Motion for Substantive Consolidation.

### INTRODUCTION

Trustee has moved the Court for an order, pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015, substantively consolidating the estate of GKPS, Inc. with the estate of Symphony Healthcare V, LLC, as consolidated ("Symphony Debtor") case no. 04-32593 in this Court, and with the non-debtor estates of Symphony III, Inc., an inactive corporation organized under the laws of the State of Tennessee ("Symphony III"), and Hospital and Surgical Center Management Services, L.P., a limited partnership organized under the laws of the State of Nevada, whose authority was revoked on December 1, 2004 ("HSC") (collectively the "Symphony Entities").



Trustee moves the Court for an order substantively consolidating the Symphony Entities

Page 1 -  **MEMORANDUM OF LAW IN SUPPORT OF TRUSTEE'S MOTION FOR SUBSTANTIVE CONSOLIDATION UNDER § 105(a)**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

::ODMA\PCDOCS\PORTLAND\531728\1

into a single estate, *nunc pro tunc* to March 23, 2004, the date on which the first of the entities comprising the Symphony Debtor were placed into involuntary bankruptcy, with an express preservation for the consolidated estate of any and all claims held at the time of consolidation by any and all of the Symphony Entities against persons or entities other than the Symphony Entities.

## JURISDICTION

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper under 11 U.S.C. §§ 1408 and 1409.[1] The statutory predicate for the relief requested herein is § 105(a) and Fed. R. Bankr. P. 1015.

## ARGUMENT

The power of the bankruptcy court to order substantive consolidation derives from the court's inherent equitable powers under § 105(a) and has been recognized since the passage of the Bankruptcy Act of 1898. *In re Bonham*, 229 F.3d 750, 763 (9th Cir. 2000) (citation omitted). "Orders of substantive consolidation combine the assets and liabilities of separate and distinct—but related—entities into a single pool and treat them as though they belong to a single entity." *Id.* at 764 (citation omitted).

Substantive consolidation is appropriate when "there exist[s] a unity of interest and ownership common to all corporations, and . . . adher[ing] to the separate corporate entities theory would result in an injustice to the bankrupt's creditors." *Id.* at 767 (quoting *Soviero v. Franklin Nat'l Bank of Long Island*, 328 F.2d 446, 448 (2d Cir. 1964)). In other words, the purpose of substantive consolidation is to "allow a truly equitable distribution of assets by treating [such] corporate shells as a single economic unit." *Id.* at 768. Indeed, "[w]ithout the

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

Page 2 - **MEMORANDUM OF LAW IN SUPPORT OF TRUSTEE'S MOTION FOR SUBSTANTIVE CONSOLIDATION UNDER § 105(a)**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

::ODMA\PCDOCS\PORTLAND\531728\1

check of substantive consolidation, debtors could insulate money through transfers among inter-company shell corporations with impunity." *Id.* at 764.

The Symphony Entities' ownership structure exhibits a striking unity of interest and common ownership. It is undisputed that GKPS is the sole shareholder of the Symphony Debtor (and was the sole owner of Symphony I, Symphony II, Symphony IV, and Symphony V, the entities that themselves were substantively consolidated to become the Symphony Debtor). Moreover, it is undisputed that GKPS is the sole owner of Symphony III and is the sole general partner of HSC, and that the four individual shareholders of GKPS—Suresh N. Gadasalli ("Gadasalli"), Roberta A. Kale ("Kale"), Kenneth W. Perry ("Perry"), and Sudhir P. Srivastava ("Srivastava")—are also the sole limited partners of HSC. (Gadasalli, Kale, Perry and Srivastava are also the defendants (collectively the "Owner Defendants") in two identical adversary proceedings filed by the trustees of the Symphony Debtor and GKPS as Adv. Pro. Nos. 06-03215 and 06-03216, respectively (collectively the "Adversary Proceeding").

When Perry, the former Chief Executive Officer of GKPS and perhaps the most knowledgeable of the Defendants with respect to the overall structure and day-to-day operations of the Symphony Entities, was examined pursuant to Fed. R. Bankr. P. 2004, he readily admitted that the Symphony Entities were but instrumentalities of one another. When asked if he was using the term "Symphony" synonymously with the term "GKPS," Perry responded, "It's one in the same. Symphony is only a doing business name." (Goldberg Affidavit, Ex. A, Perry 2004 Exam Part I, p. 63, lines 8-11). When asked whether HSC ever had an office, Perry responded, "No. Really, there's only been one Symphony office, and it was all together. I mean there wasn't any separation." (Goldberg Affidavit, Ex. A, Perry 2004 Exam Part I, p. 48, lines 1-3).

The Ninth Circuit has explicitly endorsed the substantive consolidation of non-debtor as well as debtor entities. *See, e.g., In re Bonham*, 229 F.3d at 765 (discussing cases). Such

Page 3 - **MEMORANDUM OF LAW IN SUPPORT OF TRUSTEE'S MOTION FOR SUBSTANTIVE CONSOLIDATION UNDER § 105(a)**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

::ODMA\PCDOCS\PORTLAND\531728\1

consolidation is entirely appropriate in the instant proceeding. The only reason Symphony III and HSC did not file for bankruptcy is that they were mere shells that had already served their purpose prepetition.

Symphony III's sole asset while it was still an active corporation was the Woodland Park medical office building located at 10373 NE Hancock, Portland, Oregon ("Office Building"). On or about September 17, 2002, Symphony III sold the Office Building for $1,500,000, without ever listing it with a realtor, even though its taxed assessed value was approximately $2,700,000 ("Building Sale"). Perry admits in his Answer to the Adversary Proceeding that the Office Building was never listed with a realtor, while Gadasalli and Srivastava admit in their Answer that the tax assessed value was $2,700,000 and that the purchase price was $1,500,000.

The beneficiary of the Building Sale was the Office Building's purchaser, OR-TEX Realty, Ltd. ("OR-TEX"), a limited partnership organized under the laws of the State of Texas. The sole general partner of OR-Tex is Arasu, Inc., a corporation organized under the laws of the State of Texas, which is owned by Gadasalli. The sole limited partners of OR-TEX are Gadasalli and Srivastava.

The Trustee alleges that the Building Sale was a fraudulent transfer under § 544(b) and relevant state law. The most obvious party to seek avoidance of the Building Sale is Symphony III, which was the entity most directly injured by the transaction, but which did not file for bankruptcy. To force either the Symphony Debtor or GKPS to assert claims on behalf of Symphony III, when Symphony III is nothing but a defunct corporate shell, is precisely the sort of privileging of form over substance that the equitable remedy of substantive consolidation is intended to thwart.

Similarly, HSC was but a mere instrumentality of GKPS with no meaningful separate existence. Perry admitted in his Rule 2004 exam that HSC was an entity that had been formed

Page 4 - **MEMORANDUM OF LAW IN SUPPORT OF TRUSTEE'S MOTION FOR SUBSTANTIVE CONSOLIDATION UNDER § 105(a)**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

::ODMA\PCDOCS\PORTLAND\531728\1

but "never got used," (Goldberg Affidavit, Ex. A, Perry 2004 Exam Part I, p. 43, lines 16-18), and that it was an extraneous, duplicative entity that did not serve any legitimate purpose. (Goldberg Affidavit, Ex. B, Perry 2004 Exam Part II, p. 9, line 25; p. 10; lines 1-4). Indeed. Gadasalli and Srivastava, two of HSC's four limited partners, testified under oath that they had never heard of HSC prior to being asked about it in connection with their Rule 2004 exams. (Goldberg Affidavit, Ex. C, Srivastava 2004 Exam, p. 31, lines 7-9; Goldberg Affidavit, Ex. D, Gadasalli 2004 Exam, p. 23; lines 9-11).

As a technical matter, however, HSC is the named borrower on an unsecured loan ("Loan") made by Western National Bank, also a defendant in the Adversary Proceeding ("WNB"). (Goldberg Affidavit, Ex. E, Loan Agreement, p. 1). The Statement of Financial Affairs filed by both Symphony Debtor and GKPS (which were administratively consolidated) indicates that hundreds of thousands of dollars were paid to HSC by the debtors in the year prior to bankruptcy ("One-Year Payments"), with some portion of those payments being made in the 90 days prior to bankruptcy ("Ninety-Day Payments") (collectively the "Loan Payments"). (Goldberg Affidavit, Ex. F, SoFA, p. 2).

At the continued § 341(a) meeting for GKPS and Symphony Debtor, held on June 22, 2004, Perry, Edward C. Hostmann (interim Chief Executive Officer of the debtors-in-possession), and Craig Gabbert (debtor's counsel) clearly stated that the Loan Payments were payments to WNB to reduce the indebtedness owed on the Loan. (Goldberg Affidavit, Ex. G, § 341(a), p. 94; lines 13-14 ("that's the Western National Bank payment"[Hostmann])). Additionally, the § 341(a) testimony reveals that the intent of the parties to the Loan transaction was that the borrower was in reality GKPS. (Goldberg Affidavit, Ex. G, § 341(a), p. 95, lines 5-6 ("it was a loan to GKPS"[Perry]); *see also* Goldberg Affidavit, Ex. A, Perry 2004 Exam Part I, p. 50, lines 6-8 ("we basically signed a note with Western National Bank for a million dollars that went into GKPS")).

Page 5 - **MEMORANDUM OF LAW IN SUPPORT OF TRUSTEE'S MOTION FOR SUBSTANTIVE CONSOLIDATION UNDER § 105(a)**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

::ODMA\PCDOCS\PORTLAND\531728\1

There is no dispute that the Loan Payments were made and applied toward the outstanding balance of the loan. (*See* Goldberg Affidavit, Ex. H, Payoff Letter, p. 1 (postpetition letter from WNB stating that the total payoff amount required to fully satisfy the Loan was only $531, 488.66)). It is also equally clear that the funds used to make the Loan Payments belonged to GKPS and/or Symphony Debtor. (*See* Goldberg Affidavit, Ex. I, Debit Slips, p. 1-2; Goldberg Affidavit, Ex. J, Statement, p. 2 ($161,013.67 debited in April 2003 for "loan payments" from a WNB account, No. 22403949, in the name of "GKPS, Inc. dba Symphony Healthcare")).

Lastly, any argument that a creditor relied on HSC's "separate identity in extending credit," *In re Bonham*, 229 F.3d at 766, borders on the frivolous given HSC's principals' admissions that the entity never conducted any business or had a single employee or a separate office, and, in the case of 50-percent of the limited partners, that they never even knew the entity existed. (*See also* Goldberg Affidavit, Ex. E, Loan Agreement, p. 2-4 (Loan personally guaranteed by Gadasalli, Kale, Perry and Srivastava); Goldberg Affidavit, Ex. B, Perry 2004 Exam Part II, p. 11, lines 1-5 ("That's the way the documents had got drafted up . . . [A]s far as the bank was concerned, we were guaranteeing this thing personally, so I don't think they really cared what entity it was being borrowed under.")).

The Trustee alleges, among other related causes of action, that the Ninety-Day Payments were preferential with respect to WNB and that the One-Year Payments were preferential with respect to Owner Defendants given their incontrovertible status as insiders and guarantors, pursuant to § 547(b). In light of the obvious unity of interest and ownership among the Symphony Entities, it would again be privileging form over substance to force either the Symphony Debtor or GKPS to assert claims on behalf of HSC, when HSC is unquestionably nothing but a defunct "corporate" shell and was, at most, a merely theoretical conduit for the Loan Payments.

Page 6 - **MEMORANDUM OF LAW IN SUPPORT OF TRUSTEE'S MOTION FOR SUBSTANTIVE CONSOLIDATION UNDER § 105(a)**

::ODMA\PCDOCS\PORTLAND\531728\1

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

In much the same way as the Ninth Circuit has approved consolidating non-debtor as well as debtor entities, it has authorized the bankruptcy courts to order such consolidation on a *nunc pro tunc* basis to "make it possible for [trustees] to pursue avoidance actions." *In re Bonham*, 229 F.3d at 768. Once the court has made a determination that the parties to be consolidated are "substantially the same," the date of "the original involuntary bankruptcy petition is the controlling date from which to measure the limitations period for the trustee's avoidance actions." *Id.* at 771.

In sum, it is entirely appropriate for this Court to order substantive consolidation of the Symphony Entities on a *nunc pro tunc* basis with preservation of the avoidance powers. Doing so may well be "the only means to fund the litigation necessary to permit a distribution to the unsecured creditors." *Id.* at 769 (citing *In re Giller*, 962 F.2d 796, 797-98 (8th Cir. 1992) (the "only hope for paying the bulk of creditors was to use to the assets of one solvent Debtor to pursue fraudulent conveyance and preference causes of action")). Compared to the benefits of substantive consolidation for the majority of unsecured creditors of the Symphony Entities,

> the only 'harm' is that third parties may have greater exposure to risk because they may lose a legal defense to what would otherwise be viable claims of [avoidable] transfer[s]. In short, the alleged "harm" is that fraudulent [and preferential] transfers of money will be recovered, the estates will be equitably administered and the assets equitably distributed.

*Id.* at 767. Accordingly, the Trustee respectfully requests that this Court enter an order substantively consolidating the Symphony Entities into a single estate, *nunc pro tunc* to March 23, 2004, with preservation of all claims held by the Symphony Entities other than inter-company claims.

DATED July 18, 2006

BALL JANIK LLP

By: _____
David W. Criswell, OSB #92593
Of Attorneys for Amy Mitchell,
Chapter 7 Trustee

Page 7 -  **MEMORANDUM OF LAW IN SUPPORT OF TRUSTEE'S MOTION FOR SUBSTANTIVE CONSOLIDATION UNDER § 105(a)**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

::ODMA\PCDOCS\PORTLAND\531728\1